UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **JERRY L. JOHNSON** | * | **CIVIL ACTION NO.  16-1632** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **JPMORGAN CHASE & CO., a/k/a JP MORGAN CHASE BANK, N.A.** | * | **MAG. JUDGE KAREN L. HAYES** |

<u>**REPORT AND RECOMMENDATION**</u>

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 6] filed by defendant JPMorgan Chase Bank, N.A.  For reasons explained below, it is recommended that the motion be DENIED.

<u>**Background**</u>

According to the allegations of the complaint, on July 16, 2003, JPMorgan Chase Bank, N.A. (incorrectly sued as "JPMorgan Chase & Co., a/k/a JPMorgan Chase Bank, N.A.") (hereinafter, "JPMC") hired Jerry Johnson as an operations specialist at its Monroe branch. (Compl.).  For the next thirteen years, Johnson performed his duties without any conflicts, unpleasant incidents, or disciplinary write-ups.  *Id*.   In fact, all of his performance reviews were positive.  *Id*.  On an unspecified date, likely in 2014, Amanda Stephenson became Johnson's direct supervisor, whereupon she began to harass Johnson on account of his disability – post traumatic stress disorder ("PTSD").  *Id*.  Stephenson told co-workers that Johnson suffered from PTSD, and therefore, Johnson was unreliable and mentally unstable.  *Id*.

In January 2015, Stephenson intensified the harassment by providing contradictory

instructions to Johnson, and then reporting him for his failure to comply with them, as well as other instructions that had not been conveyed to him at all. *Id*. The next day, Johnson reported Stephenson's harassment to the department manager, Bill Rankin, and also filed a formal complaint against Stephenson with the human resources department, wherein he detailed that she repeatedly had harassed him due to PTSD. *Id*.

After she was notified of Johnson's complaints against her, Stephenson continued to harass Johnson in February 2015. *Id*. She immediately began making derogatory comments about Johnson to other employees, such as, Johnson was a "trained military killer," and "unsupervisable" [sic]. *Id*. When Johnson learned what Stephenson had said about him, he immediately suffered a nervous breakdown. *Id*. Because of the resulting workplace tension, Bill Rankin instructed Johnson to go home. *Id*.

Johnson received "FMLA" leave and short-term disability leave through May 31, 2015. *Id*. On May 28, 2015, three days before he was scheduled to return work, JPMC terminated Johnson's employment without any reasonable explanation. *Id*. JPMC apparently discharged Stephenson also. *Id*.

On December 12, 2015. Johnson filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). On July 12, 2016, the EEOC completed its investigation and issued Johnson a dismissal and right to sue notice.

On October 10, 2016, Johnson filed the instant suit against JPMC under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. and the Louisiana Employment Discrimination Law ("LEDL") La. R.S. § 23:301, *et seq.*, in the 4th Judicial District Court for the Parish of Ouachita, State of Louisiana. Plaintiff alleges that JPMC permitted a hostile work environment to exist, discriminated against him on the basis of his disability, PTSD, and

2

retaliated against him after he reported his supervisor's disability-based harassment. Plaintiff seeks to recover actual damages, front pay, punitive/exemplary damages, interest, attorney's fees, and costs.

On November 23, 2016, JPMC removed the case to federal court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. On November 30, 2016, JPMC filed the instant motion to dismiss for failure to state a claim upon which relief can be granted. In support of its motion, JPMC contends that plaintiff failed to plead any facts to establish that he has a disability within the meaning of the ADA and the LEDL. Plaintiff filed his opposition on December 15, 2016. [doc. # 10]. JPMC filed its reply memorandum on December 23, 2016. [doc. # 13]. Thus, the matter is ripe.

## Discussion

### I.      12(b)(6) Standard

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a

3

reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly,*

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 127 S. Ct. 2197,

2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

## II. Plaintiff's Complaint Sets Forth a Short and Plain Statement Showing that He is Entitled to Relief

JPMC contends that in order for plaintiff to state an actionable claim under the ADA for employment discrimination, harassment, and/or retaliation, he must allege sufficient facts to permit the court to infer that he has a disability as contemplated by the ADA.[1] Specifically, plaintiff must allege facts sufficient to raise a plausible inference that he has a physical or mental impairment that substantially limits one or more major life activities. JPMC maintains that plaintiff's complaint remains devoid of such allegations.

As an initial matter, the court observes that proof of a disability under the ADA is an element of plaintiff's *prima facie* claim of discrimination. *See E.E.O.C. v. LHC Grp., Inc.*, 773

---

[1] Defendant analyzed plaintiff's ADA and LEDL claims exclusively under federal law. The undersigned will follow suit given that the Louisiana courts apply federal jurisprudence to assess discrimination claims under the LEDL. *Labit v. Akzo-Nobel Salt, Inc.*, 209 F.3d 719, 719, n.1 (5th Cir. 2000); *see also Conine ex rel. Estate of Addie v. Universal Oil Products Co.*, 966 So. 2d 763, 767 (La. App. 2d Cir. 2007).

F.3d 688, 697 (5th Cir.2014). However, "an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a Rule 12(b)(6) motion. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S.Ct. 992, 997 (2002). The Court explained that the prima facie case pertains to the evidentiary standard, not a pleading requirement. *Id*. Accordingly, plaintiff's complaint need only comply with Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8; *Swierkiewicz,* 423 U.S. at 515.[2] Upon review, plaintiff's complaint readily complies with the foregoing requirement.

In any event, to the extent that case law suggests that plaintiff must go beyond Rule 8 and allege facts to support the *inference* that he has a disability that substantially limits one or more life activities, the court finds that he has done so.

The ADA prohibits a covered entity, i.e. an employer,[3] from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §§ 12111-12112. In 2008, the Congress passed the "ADA Amendments Act of 2008," (the "ADAAA"), with a stated purpose, *inter alia*, "to carry out the ADA's objectives of providing clear and comprehensive national mandate for the elimination of discrimination and clear, strong, consistent, enforceable standards addressing discrimination by reinstating a broad scope of protection to be available under the ADA . . ." (ADAAA, PL 110-325, September 25, 2008, 122 Stat 3553). The ADAAA went into effect on January 1, 2009. *Id*.

---

[2] Furthermore, *Twombly* did not overrule *Swierkiewicz*. *See Twombly*, 550 U.S. at 569-70.

[3] JPMC does not contest that it is a covered entity.

The ADA defines "disability," with respect to an individual, as

**(A)** a physical or mental impairment that substantially limits one or more major life activities of such individual;[4]

**(B)** a record of such an impairment; or

**(C)** being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1).

Importantly, plaintiff need only show that his employer discriminated against him "because of his actual or a perceived . . . impairment, **regardless of whether the impairment limits a major life activity**." *Thomas v. Hill*, Civ. Action No. 13-2326, 2014 WL 3955656, at *7 (W.D. La. Aug. 13, 2014), aff'd, 621 Fed. Appx. 278 (5th Cir.2015).[5]

The ADAAA clarified that the definition of disability shall be construed in favor of broad coverage of individuals to the maximum extent permitted by the terms of this chapter. 42 U.S.C. § 12102(4)(A). The stated purposes behind the ADAAA included, *inter alia*,

---

[4] Furthermore, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A) (emphasis added).

[5] Indeed, according to the regulations:
[w]here an individual is not challenging a covered entity's failure to make reasonable accommodations and does not require a reasonable accommodation, it is generally unnecessary to proceed under the "actual disability" or "record of" prongs, which require a showing of an impairment that substantially limits a major life activity or a record of such an impairment. In these cases, the evaluation of coverage can be made solely under the "regarded as" prong of the definition of disability, which does not require a showing of an impairment that substantially limits a major life activity or a record of such an impairment. An individual may choose, however, to proceed under the "actual disability" and/or "record of" prong regardless of whether the individual is challenging a covered entity's failure to make reasonable accommodations or requires a reasonable accommodation.
29 C.F.R. § 1630.2(g)(3).

    (4)    to reject the standards enunciated by the Supreme Court in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), that the terms "substantially" and "major" in the definition of disability under the ADA "need to be interpreted strictly to create a demanding standard for qualifying as disabled and that to be substantially limited in performing a major life activity under the ADA "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives;"

    (5)    to convey congressional intent that the standard created by the Supreme Court in the case of *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) for "substantially limits", and applied by lower courts in numerous decisions, has created an inappropriately high level of limitation necessary to obtain coverage under the ADA, **to convey that it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis**; and

    (6)    to express Congress' expectation that the Equal Employment Opportunity Commission will revise that portion of its current regulations that defines the term "substantially limits" as "significantly restricted" to be consistent with this Act, including the amendments made by this Act.

ADAAA, PL 110-325 (emphasis added).

In accordance with Congress's instructions, the EEOC amended its regulations effective April 4, 2012, to provide, as follows,

    (j) Substantially limits--

    (1) Rules of construction. The following rules of construction apply when determining whether an impairment substantially limits an individual in a major life activity:

        (i) **The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. "Substantially limits" is not meant to be a demanding standard.**

(ii) An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. **An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting**. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

(iii) **The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment "substantially limits" a major life activity should not demand extensive analysis**.

(iv) The determination of whether an impairment substantially limits a major life activity requires an individualized assessment. However, in making this assessment, the term "substantially limits" shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for "substantially limits" applied prior to the ADAAA.

(v) The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis. Nothing in this paragraph is intended, however, to prohibit the presentation of scientific, medical, or statistical evidence to make such a comparison where appropriate.

(vi) The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures. However, the ameliorative effects of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity.

(vii) **An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active**.

>(viii) An impairment that substantially limits one major life activity need not substantially limit other major life activities in order to be considered a substantially limiting impairment.
>
>(ix) The six-month "transitory" part of the "transitory and minor" exception to "regarded as" coverage in § 1630.15(f) does not apply to the definition of "disability" under paragraphs (g)(1)(i) (the "actual disability" prong) or (g)(1)(ii) (the "record of" prong) of this section. The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section.

(2) Non-applicability to the "regarded as" prong. Whether an individual's impairment "substantially limits" a major life activity is not relevant to coverage under paragraph (g)(1)(iii) (the "regarded as" prong) of this section.

*     *     *

(3)(ii) Applying the principles set forth in paragraphs (j)(1)(i) through (ix) of this section, the individualized assessment of some types of impairments will, in virtually all cases, result in a determination of coverage under paragraphs (g)(1)(i) (the "actual disability" prong) or (g)(1)(ii) (the "record of" prong) of this section. **Given their inherent nature, these types of impairments will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity. Therefore, with respect to these types of impairments, the necessary individualized assessment should be particularly simple and straightforward.**

(iii) For example, applying the principles set forth in paragraphs (j)(1)(i) through (ix) of this section, it should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: . . . **post-traumatic stress disorder . . . substantially limit[s] brain function**. The types of impairments described in this section may substantially limit additional major life activities not explicitly listed above.

(4) Condition, manner, or duration--

>(i) At all times taking into account the principles in paragraphs (j)(1)(i) through (ix) of this section, in determining whether an individual is substantially limited in a major life activity, it may be useful in appropriate cases to consider, as compared to most people in the general population, the condition under which the individual performs the major life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity.

(ii) Consideration of facts such as condition, manner, or duration may include, among other things, consideration of the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the operation of a major bodily function. In addition, the non-ameliorative effects of mitigating measures, such as negative side effects of medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity.

(iii) In determining whether an individual has a disability under the "actual disability" or "record of" prongs of the definition of disability, the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population.

(iv) **Given the rules of construction set forth in paragraphs (j)(1)(i) through (ix) of this section, it may often be unnecessary to conduct an analysis involving most or all of these types of facts. This is particularly true with respect to impairments such as those described in paragraph (j)(3)(iii) of this section, which by their inherent nature should be easily found to impose a substantial limitation on a major life activity, and for which the individualized assessment should be particularly simple and straightforward.**

29 C.F.R. § 1630.2(j)(1), (2), & (4) (emphasis added).

Applying the foregoing considerations to the case at hand, the court emphasizes that plaintiff suffers from PTSD. The diagnostic criteria for PTSD contemplates that "the disturbance causes clinically significant distress or impairment in social, occupational, or other important areas of functioning." AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 429 (4th ed. 1994) (DSM-IV)). In other words, consistent with the regulations, a diagnosis for PTSD means that, by definition, the impairment

significantly impacts functional capacity.[6]

Furthermore, the court encounters little difficulty inferring that plaintiff's PTSD plausibly affects the major life activities of thinking, concentrating, communicating, and working. The fact that, despite his PTSD, he managed to work for years without incident is not dispositive. The court reasonably may infer that plaintiff's PTSD affected how he communicated with his supervisor and influenced his reactions (including his nervous breakdown), to the stress caused by the disability-based harassment and discrimination inflicted by his supervisor. Moreover, the court also reasonably infers that the discrimination experienced by plaintiff exacerbated his PTSD such that he was required to take FMLA leave.[7]

In addition, the court plausibly infers that JPMC regarded plaintiff as suffering from a mental impairment. First, JPMC granted FMLA leave to plaintiff, which suggests that JPMC believed that plaintiff had a medical reason for the leave. *See* fn. 7. Second, JPMC discharged plaintiff from employment, despite his theretofore unblemished work record, which, in the absence of any reasonable explanation for the adverse job action, leads to the reasonable inference that JPMC came to believe that plaintiff suffered from a mental impairment that rendered him unemployable or undesirable.

In the end, plaintiff's allegations are no less fact-intensive or detailed than those set forth

---

[6] While the Fifth Circuit once held that PTSD, standing alone, was insufficient to establish a disability under the ADA, the law has since changed. *See Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir.1998).

[7] "The Family and Medical Leave Act of 1993 allows eligible employees working for covered employers to take temporary leave for **medical reasons**, for the birth or adoption of a child, and for the care of a spouse, child, or parent who has a serious health condition, without the risk of losing employment." *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001) (citing 29 U.S.C. § 2601(b)(1) and (2)) (emphasis added).

in *Wooten v. McDonald Transit Associates, Inc.*, which the Fifth Circuit found sufficient to satisfy Rule 8's low threshold. *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).[8] *Wooten* compels the same outcome here.[9]

## Conclusion

Relying upon judicial experience and common sense, the court finds that plaintiff's complaint, as amended, states plausible claims for relief under the ADA and the LEDL sufficient to afford defendant fair notice of the claim(s) against it, along with the reasonable *expectation* that discovery will reveal relevant evidence for each of the elements of the claim. *Twombly, supra*. Accordingly,

IT IS RECOMMENDED that the motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 6] filed by defendant JPMorgan Chase Bank, N.A. be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any

---

[8] In *Wooten*, an ADEA case, plaintiff alleged that he had been employed by defendant for approximately 12 years; that one year before he was fired, he filed a charge with the EEOC; thereafter, his employer "discriminated and retaliated against [him], and created a hostile work environment, until such time that [he] was constructively discharged . . . "; and that he suffered resulting harm. *Wooten*, 788 F.3d at 498.

[9] The undersigned appreciates that other courts have reached a different outcome under analogous circumstances. In so doing, however, they either decided the issue at a different stage of the proceedings, e.g., summary judgment, or otherwise did not give full effect to the changes wrought by the ADAAA.

objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 18th day of February 2017.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE