# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| JERRY L. JOHNSON | CIVIL ACTION NO. 16-1632 |
| VERSUS | JUDGE ROBERT G. JAMES |
| J P MORGAN CHASE BANK, N.A. | MAG. JUDGE KAREN L. HAYES |

## RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 22] filed by Defendant JPMorgan Chase Bank, N.A. Plaintiff Jerry L. Johnson opposes the motion. [Doc. No. 27]. For reasons assigned below, the Motion for Summary Judgment is GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

Defendant employed Plaintiff, an Army veteran who served in the first Gulf War, in July of 2003. At all relevant times, Defendant employed Plaintiff as an Operations Specialist at its document storage facility in Monroe, Louisiana. From 2003 to 2011, Plaintiff took three medical leaves of absence. Plaintiff alleges that he suffers from post traumatic stress disorder ("PTSD").

From 2011 through the end of his employment in 2015, Amanda Stephenson supervised Plaintiff. Plaintiff claims that Stephenson harassed him from approximately October of 2014 to December of 2014. [Doc. No. 22-3, pp. 18-42].

On December 10, 2014, Plaintiff called Human Resources and complained that Stephenson improperly coached and counseled him for allegedly failing to listen to her request. *Id.* at 103-04. Plaintiff did not report any disability-based harassment. [Doc. No. 22-2, p. 8]. Aside from this call, Plaintiff testified that he has no memory of ever calling Human Resources to complain about

Stephenson.  [Doc. No. 22-3, p. 57].

Shortly after December 10, 2014, Plaintiff asked his manager, Bill Rankin, for a transfer to Defendant's separate facility to "get away from [Stephenson]."  *Id.* at 57.  Plaintiff did not inform Rankin of any disability-based harassment.  [Doc. No. 22-2, p. 2].  Rankin granted Plaintiff's request.  [Doc. No. 22-3, p. 57].

On January 20, 2015, Plaintiff came to work in a depressed mood and did not feel like himself.  [Doc. No. 22-3, pp. 59, 62].  When he arrived, he spoke with his coworker, Anita McNair, on an outside patio.  [Doc. Nos. 22-2, p. 4; 22-3, p. 61].  After he spoke to McNair, Plaintiff spoke with Vernice Teasley, a supervisor, in the mail room.  [Doc. No. 22-3, p. 67].  Plaintiff testified that, when speaking with Teasley, he "just couldn't hold it together anymore" and that he was crying, depressed, and tired.  *Id.* at 68.  He testified that he was angry with Stephenson and that he possibly wanted to confront her.  *Id.* at 70-71.  When asked if it was possible he could have told Teasley he wanted "to kill the b****," Plaintiff answered, "I guess anything's possible."  *Id.*  Plaintiff then clarified that he did not tell Teasley he wanted to kill Stephenson.  *Id.* at 72.  Plaintiff stated, though, that he did not have a clear memory of what he told her.  *Id.*

While still upset and crying, Plaintiff went outside and spoke with Rankin, who helped calm Plaintiff.  Plaintiff asked Rankin why Stephenson was picking on him and then asked, "What is she trying to do; make me hurt her or something? . . . I didn't go in the army, spend 22 years to come out and hurt no civilians."  [Doc. Nos. 22-2, p. 5; 22-3, p. 75].  When asked if "there would be a tipping point as to when" Plaintiff might hurt Stephenson, Plaintiff responded that he did not know "in that state."  [Doc. No. 22-3, p. 75].

On January 20 and 21, 2015, Angela Bordelon, Vice President of Chase's Global Security

Department, interviewed Rankin, Teasley, McNair, and Stephenson about Plaintiff's statements on January 20. Teasley reported that Plaintiff stated "he was mad enough to kill the B____." [Doc. No. 22-4, p. 13]. Others reported that Plaintiff actually stated "he was going to kill the b****." *Id.* at 4-5. Plaintiff "adamantly denies . . . that he threatened to kill anyone." [Doc. No. 27-3, p. 4].

McNair informed Bordelon that Plaintiff stated he would pay Stephenson a visit before leaving town if he was discharged. [Doc. No. 22-4, pp. 11-12]. In addition, Paul Pendler, Vice President of Chase's Employee Assistance Program, spoke with Plaintiff on January 20 about the threatening comments and Plaintiff reported that he had no recollection of making threatening statements. [Doc. Nos. 22-2, p. 6; 22-4, p. 11].

After Rankin's conversation with Plaintiff on January 20, he sent Plaintiff home for a few days; thereafter, Plaintiff immediately went to his doctor for help and took an extended medical leave of absence. [Doc. No. 22-2, p. 5].

On January 29, 2015, Human Resources determined that Plaintiff's December 10, 2014 complaint concerning Stephenson's improper coaching and counseling was valid and that the "coaching and counseling" would be removed from Plaintiff's file. [Doc. No. 22-3, p. 103].

Defendant extended Plaintiff's leave of absence multiple times. He was scheduled to return to work on April 5, 2015. On April 2, 2015, after receiving notice that Plaintiff was expected to return on April 5, Bordelon interviewed Plaintiff via telephone. Plaintiff told her that he could not remember making any threatening statements about his supervisor, Stephenson, and did not remember saying he wanted to "kill the B****." [Doc. No. 22-5, p. 4]. Ultimately, Plaintiff's leave of absence was extended through May 31, 2015. *Id.* at 3.

Defendant maintains that, "[b]ased on its investigation into Plaintiff's two threatening

comments on January 20 (that he was mad enough to 'kill the B****,' and that he did not want to hurt civilians), and the third comment that was reportedly made the week before January 20 (that he would 'pay a visit' to Amanda if he got fired), . . . Plaintiff's conduct violated its Violence Free Workplace Policy ["the Policy"]." [Doc. No. 22-2, p. 7]. Plaintiff, however, maintains that he did not engage in any conduct that violated the Policy.[1]

Defendant maintains that, because Plaintiff violated the Policy, it "decided to terminate [his] employment once he was released by his doctors to return to work."[2] [Doc. No. 22-2, p. 7]. To reiterate, Plaintiff's leave of absence was extended through May 31, 2015. However, Defendant discharged Plaintiff on May 28, 2015. *Id.* at 8.

Plaintiff filed suit in state court on October 10, 2016, claiming that Defendant violated the Americans with Disabilities Act ("ADA") and the Louisiana Employment Discrimination Law ("LEDL") by allowing "an intolerable and hostile working environment to exist," discriminating against him because of his disability, and discharging him in retaliation for complaining about his supervisor's alleged harassing conduct. [Doc. No. 1-1, p. 5-9]. Defendant removed the proceeding to this Court on November 23, 2016. [Doc. No. 1].

On December 7, 2017, Defendant moved for summary judgment on all of Plaintiff's claims. [Doc. No. 22]. Plaintiff responded on December 29, 2017 [Doc. No. 27], and Defendant replied on January 12, 2018 [Doc. No. 28].

_____

[1] Plaintiff testified that he was aware of the Policy and understood that a violation could lead to termination. [Doc. No. 22-3, pp. 11-12].

[2] Betsy Michaud, Donna Willis, Melodi Merritt, and Bill Rankin participated in the decision to discharge Plaintiff. *Id.* at 8.

4

## II. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[3]

In evaluating a motion for summary judgment, courts "may not make credibility

---

[3] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

B.    **Hostile Work Environment Under the ADA**

To establish a hostile work environment claim under the ADA, a plaintiff must show:

(1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

*Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001) (quoting *McConathy*

*v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998)).

Here, Defendant grounds its motion primarily on the fourth factor, arguing that the alleged harassment did not affect a term, condition, or privilege of Plaintiff's employment. [Doc. No. 22-1, p. 15]. "Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). Courts examine the totality of circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Ramsey*, 286 F.3d at 268). But "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not suffice to alter the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation and internal quotation marks omitted). The conduct, in the end analysis, must be "extreme." *Id.* at 788.

Here, from approximately October of 2014 to December of 2014, Amanda Stephenson allegedly harassed Plaintiff by

> (1) telling him he would never be a team leader;
>
> (2) accusing him of failing to deliver boxes that he was not responsible for delivering;
>
> (3) accusing him of failing to deliver pallets that she never instructed him to deliver;
>
> (4) sending another employee she knew Plaintiff did not like to retrieve items from Plaintiff's cubicle;
>
> (5) pulling him away from his work duties;

(6) asking him to withdraw a human resources complaint he filed against her;

(7) accusing him of using profanity; and

(8) informing others that he had PTSD and was a trained killer.

[Doc. No. 22-3, pp. 18-42]. Of all these alleged actions, only the last was based on Plaintiff's alleged disability. Plaintiff, however, did not hear Stephenson tell anyone he had PTSD, he does not know when Stephenson made the comments, he does not know when he learned Stephenson made the comments, and he does not know whom she told. *Id.* at 38-40. Moreover, Plaintiff testified that Stephenson did not say anything to him directly about his disability. *Id.* at 86.

Comparing Stephenson's alleged act of informing others that Plaintiff had PTSD to instances of harassment set forth in other cases, and considering all the circumstances, the disability-based harassment[4] Plaintiff suffered, even if proved, is not so severe or pervasive that it affected a term, condition, or privilege of Plaintiff's employment.[5] While Stephenson's conduct may have been

---

[4] The "*disability-based* harassment must 'be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment.'" *Flowers*, 247 F.3d at 236 (quoting *McConathy*, 131 F.3d at 563) (emphasis added).

[5] *See Travis*, 221 F. App'x at 348 (finding that the plaintiff "failed to show that his employer's actions were based solely on his disability."); *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 510 (5th Cir. 2003) (finding no hostile work environment where supervisor expressed his unwillingness to be treated by a dentist, like plaintiff, infected with hepatitis C or to allow plaintiff to suture his child); *McConathy* 131 F.3d at 558 (finding no hostile environment when employee approached supervisor regarding her need for additional surgery, and supervisor got angry, told her that she "better get well this time" and that he would "no longer tolerate her health problems," and said it was inappropriate for her to make extensive use of health benefits because of her position as benefits manager); *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 595-96 (5th Cir. 1995) (noting that "mere utterance of an . . . epithet which engenders offensive feelings in an employee" is not enough to constitute hostile environment harassment); *Kumar v. Shinseki*, 495 F. App'x 541, 543 (5th Cir. 2012) (rejecting plaintiff's hostile work environment claim even where hostility occurred sporadically over a 27–month period); *Gordon v. Acosta Sales & Mktg., Inc.*, 622 F. App'x 426, 430 (5th Cir. 2015).

subjectively offensive, it was not objectively offensive enough to amount to a change in the terms or conditions of Plaintiff's employment.[6]  As the conduct Plaintiff experienced was not sufficiently extreme, Defendant is entitled to judgment as a matter of law, and Plaintiff's ADA hostile work environment claim is DISMISSED WITH PREJUDICE.

### C.    Retaliation Under the ADA

Plaintiff claims that Defendant discharged him in retaliation for reporting Amanda Stephenson's harassing conduct.  [Doc. No. 1-1, p. 7].  To establish a prima facie case of retaliation under the ADA, a plaintiff must show that "(1) [he] participated in an activity protected under the statute; (2) [his] employer took adverse employment action against [him]; and (3) a causal connection exists between the protected activity and the adverse action."  *Molden v. E. Baton Rouge Par. Sch. Bd.*, 2017 WL 4479426, at *6 (5th Cir. Oct. 6, 2017) (quotation marks and quoted source omitted).

Defendant argues that Plaintiff fails to establish a prima facie case of retaliation because he provides no evidence establishing that he participated in a protected activity.  [Doc. No. 22-1, p. 21].

---

[6] At best, considering that Stephenson did not utter her disability-based comments to Plaintiff, that Plaintiff did not hear Stephenson utter the comments, and that Plaintiff presents no evidence showing when, where, how often, or to whom Stephenson uttered the comments, Plaintiff's testimony is merely a scintilla of evidence of a hostile working environment.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (holding that a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence.").  The foregoing considerations reveal the lack of significant probative evidence that the comments were severe or pervasive.  *See Boutin v. Exxon Mobil Corp.*, 730 F. Supp. 2d 660, 671 (S.D. Tex. 2010) ("Such 'second-hand' harassment carries less evidentiary weight in a hostile work environment case than actions or remarks that are directed at the plaintiff herself."); *see also Johnson v. TCB Const. Co.*, 334 F. App'x 666, 671 (5th Cir. 2009) (holding that although the plaintiff offered evidence that supervisor frequently used racial expletives, the "comments were not uttered in [the plaintiff's] presence nor is there evidence that they affected his job.").

According to the Fifth Circuit:

> As set forth in the ADA, "protected activity includes opposing employment actions or practices that are unlawful under the ADA." 2 AMERICANS WITH DISABILITIES: PRACTICE & COMPLIANCE MANUAL § 7:398 (2015). Courts have recognized this includes filing charges with the EEOC alleging "discrimination on the basis of perceived disability." *See id.*; *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). However, when employees make complaints about harassment without connecting the employment practices to their disabilities, these complaints do not constitute protected activity. *See Harris–Childs v. Medco Health Solutions, Inc.*, 169 Fed. Appx. 913, 916 (5th Cir.2006) (finding that the Appellant had not engaged in a protected activity, even though she complained of unfair treatment/harassment, because she did not demonstrate that she "put the employer on notice that her complaint was based on racial or sexual discrimination").

*Gordon v. Acosta Sales & Mktg., Inc.*, 622 F. App'x 426, 431 (5th Cir. 2015). "Therefore, [t]he relevant question . . . is not whether a formal accusation of discrimination is made but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner." *Yount v. S & A Rest. Corp.*, 226 F.3d 641 (5th Cir. 2000) (quotation marks and quoted source omitted).

Here, Defendant maintains an anti-harassment policy prohibiting harassment based on disability and instructing employees to report discrimination or harassment to either Human Resources or to Defendant's Code Reporting Hotline. [Doc. No. 22-2, p. 3]. The anti-harassment policy is "contained within [Defendant's] Code of Conduct, which Plaintiff received and reviewed annually throughout his employment." *Id.* "Plaintiff reviewed the Code of Conduct every year and had to take a test on it to demonstrate that he understood the policies in the code, including to whom he should report violations." *Id.* "Plaintiff was aware that [Defendant] prohibits harassment and discrimination based on disability, and that he could report such harassment up his managerial chain of command, to Human Resources, or the [to the] hotline." *Id.*

Plaintiff testified that when he called Human Resources to complain about Stephenson's alleged harassment he did not state that Stephenson told others he had PTSD or that Stephenson harassed him in any other manner based on his disability. [Doc. No. 22-3, pp. 42, 53-54]. Plaintiff then acknowledged that he did not call Human Resources at any other time to complain about Stephenson's harassment. *Id.* at 57. Plaintiff also testified that he did not tell his manager, Rankin, about Stephenson's disability-related comments. *Id.* at 41.

Plaintiff presents no evidence demonstrating that he notified Defendant of any discrimination or harassment based on disability.[7] Consequently, there is no genuine dispute that Plaintiff participated in an activity protected under the ADA, Defendant is entitled to judgment as a matter of law, and Plaintiff's retaliation claim is DISMISSED WITH PREJUDICE.[8]

---

[7] *See Alack v. Beau Rivage Resorts, Inc.*, 286 F. Supp. 2d 771, 775 (S.D. Miss. 2003) ("Although express complaints to supervisors about perceived discriminatory practices constitute protected activity,[ ] the wide range of protected activity clearly does not include those situations where the opposition relates not to unlawful employment practices but to a personal grievance.") (quoting *Garcia–Paz v. Swift Textiles, Inc.*, 873 F. Supp. 547, 560 (D. Kan. 1995) (internal quotations omitted)); *Smith v. Hess Corp.*, 2017 WL 2215628, at *7 (S.D. Tex. May 18, 2017) ("Although [plaintiff] may have thought his failure to be promoted was related to race discrimination, his inquiry did not indicate to his supervisors that he was opposing discriminatory conduct."); *O'Daniel v. Indus. Serv. Sols.*, 2018 WL 265585, at *6 (M.D. La. Jan. 2, 2018) ("To constitute protected activity, a plaintiff's complaint—whether formal or informal—must still concern a discriminatory practice in order to form the basis of a retaliation claim under an anti-discrimination law.") (quotation marks and quoted source omitted).

[8] Plaintiff intimates that he engaged in a protected activity by taking medical or disability leave. [Doc. No. 27, pp. 2, 10]. Taking such leave, however, does not amount to activity protected under the ADA because it in no way reflects opposition to any act or practice made unlawful under the ADA. 42 U.S.C.A. § 12203(a); *see Moss v. Harris Cty.*, 2016 WL 9049981, at *4 (S.D. Tex. Jan. 13, 2016) (finding that the plaintiff's request for medical leave to accommodate his disability was not a protected activity); *Murphy v. Gallery Model Homes, Inc.*, 2005 WL 5394658, at *14 (S.D. Tex. Feb. 16, 2005) (finding that taking FMLA leave is not a protected activity under the ADA because it "does not serve as opposition of any kind as contemplated by the ADA retaliation provision."); *Price v. City of Terrell*, 2001 WL 1012697, at *3 (N.D. Tex. Aug. 15, 2001) (finding that plaintiff's decision to take FMLA leave did not

### D.      Disability Discrimination Under the ADA

Plaintiff claims that Defendant discharged him because he has PTSD.  [Doc. No. 27, p. 5-6].

Defendant counters that it terminated Plaintiff because he threatened another employee and "violated

Chase's zero-tolerance Violence Free Workplace Policy."  [Doc. No. 22-1, p. 9].

When, as here, a plaintiff offers only circumstantial evidence to prove discrimination under

the ADA, the *McDonnell Douglas* burden-shifting framework applies.  *See, e.g., E.E.O.C. v.*

*Chevron Phillips Chem. Co.*, LP, 570 F.3d 606, 615 (5th Cir. 2009).  Under this framework, an

aggrieved employee must first establish a prima facie case of discrimination by demonstrating: "(a)

she is disabled, has a record of having a disability, or is regarded as disabled, (b) she is qualified for

her job, (c) she was subjected to an adverse employment action on account of her disability or the

perception of her disability, and (d)[9] she was replaced or treated less favorably than non-disabled

employees."  *Claiborne v. Recovery Sch. Dist.*, 690 F. App'x 249, 256 (5th Cir. 2017).

"If a plaintiff establishes each element of her prima facie case, the burden then shifts to the

employer to 'articulate a legitimate, nondiscriminatory reason for the adverse employment action.'"

*Id.* (citing *Chevron Phillips Chem. Co.*, 570 F.3d at 615).  "The burden then shifts back to the

plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason

is pretextual."  *Caldwell*, 850 F.3d at 242 (quotation marks and quoted source omitted).  "A plaintiff

---

constitute protected activity under the ADA); *Smith v. Methodist Hosp. of Dallas*, 2008 WL
5336342, at *8 (N.D. Tex. Dec. 19, 2008).

  [9]  The Fifth Circuit has not definitively held that plaintiffs must establish this fourth
prong.  *Compare Claiborne*, 690 F. App'x at 256 (applying the fourth prong), *with Caldwell v.
KHOU-TV*, 850 F.3d 237, 246 (5th Cir. 2017) (declining to determine if the fourth prong
applies).

may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010) (internal quotation marks omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

Here, even assuming, without deciding, that Plaintiff establishes a prima facie case of discrimination, there is no genuine dispute that Defendant has produced legitimate, non-discriminatory reasons[10] for discharging Plaintiff and that those reasons were not pretextual.

With respect to Defendant's legitimate, nondiscriminatory reasons, Plaintiff testified that, on January 20, 2015, he spoke with Teasley, a supervisor, in the mail room. [Doc. No. 22-3, p. 67]. He testified that he was angry with Stephenson and that he possibly wanted to confront her. *Id.* at 70-71. While still upset and crying, Plaintiff then went outside and spoke with his manager, Rankin, who helped calm Plaintiff. Plaintiff asked Rankin why Stephenson was picking on him and then asked, "What is she trying to do; make me hurt her or something? . . . I didn't go in the army, spend 22 years to come out and hurt no civilians." [Doc. Nos. 22-2, p. 5; 22-3, p. 75]. When asked if "there would be a tipping point as to when" Plaintiff might hurt Stephenson, Plaintiff responded that he did not know "in that state." [Doc. No. 22-3, p. 75].

On January 20, 2015, Bordelon, Vice President of Chase's Global Security Department, interviewed Teasley and Teasley reported that Plaintiff said "he was mad enough to kill the B____."

---

[10] "The employer's burden is simply a burden of production, and it does not involve a credibility assessment." *Moffett*, 507 F. App'x at 431; *see Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981) ("[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.").

[Doc. No. 22-4, p. 13]. Others reported that Plaintiff actually stated "he was going to kill the b****." *Id.* at 4-5. McNair reported that Plaintiff said he would pay Stephenson a visit before leaving town if he was discharged. [Doc. No. 22-4, pp. 11-12].

Defendant maintains that, "[b]ased on its investigation into Plaintiff's two threatening comments on January 20 (that he was mad enough to 'kill the B****,' and that he did not want to hurt civilians), and the third comment that was reportedly made the week before January 20 (that he would 'pay a visit' to Amanda if he got fired)," . . . Plaintiff's conduct violated the Policy. [Doc. No. 22-2, p. 7]. The Policy provides:

> Under no circumstances will violence, menacing behavior or unwanted pursuit be tolerated. Such acts will be thoroughly investigated and appropriate action will be taken, including corrective action (up to and including termination of employment), banning from the premises, and/or the filing of criminal charges with law enforcement authorities. For the protection of the general employee population, any threat, whether explicit or implied, is presumed to constitute a statement of intent.

[Doc. No. 22-3, p. 110]. Defendant contends that, because Plaintiff violated the Policy, it "decided to terminate [Plaintiff's] employment once he was released by his doctors to return to work. [Doc. No. 22-2, p. 7].

Defendant's proffered reason for discharge is legitimate and non-discriminatory. *See Spencer v. Schmidt Elec. Co.*, 576 F. App'x 442, 451 (5th Cir. 2014) (finding that an employee's violation of a zero-tolerance safety policy was a legitimate, nondiscriminatory reason for termination).

Plaintiff argues that certain evidence Defendant relies on is inadmissible.[11] Federal Rule of

---

[11] Plaintiff argues, broadly, that two declarations and an excerpt from Defendant's human resource system, Answer Key Notes, attached to Defendant's motion "should be struck" in their entirety. [Doc. No. 27, pp. 3-4]. Yet, Plaintiff does not analyze every purported assertion in the attachments or identify every assertion he seeks to strike; rather, he cites to only two statements. The Court will only consider Plaintiff's argument with respect to the two statements that he references.

Civil Procedure 56(c)(2) (emphasis added) provides, "A party may object that the material cited to support or dispute a fact cannot be presented in a form that *would be admissible* in evidence." Thus, "[a]t the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." *Maurer v. Indep. Town*, 2017 WL 3866561, at *3 (5th Cir. Sept. 5, 2017). "This flexibility allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant—without imposing on parties the time and expense it takes to authenticate everything in the record." *Id.*.[12]

Here, Plaintiff argues that the following averment by Elizabeth Hanna, an Employee Relations Vice President, references inadmissible hearsay: "Based on my review of Bank records, the investigation revealed that on January 20, 2015, [Plaintiff] told his co-worker that he wanted to 'kill the b****,' referring to his supervisor, and told his manager that he didn't want to hurt civilians. The investigation also revealed that a week prior, [Plaintiff] 'complained all morning' about his supervisor, and 'mentioned that Amanda and Matt were too predictable and that if he got fired he would pay them both a visit before leaving town.'" [Doc. Nos. 27, p. 3; 22-4, p. 2].

The "investigation" that Hanna refers to includes interviews with multiple employees. [*See* Doc. No. 22-4]. Plaintiff focuses on only two statements. First, Plaintiff argues that a statement, allegedly uttered by him to Teasley and then repeated by Teasley to Bordelon in an interview, is

---

[12] *See  Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses.") *c.f. Vance v. N. Panola Sch. Dist.*, 189 F.3d 470 (5th Cir. 1999) ("While it is true that the evidence need not be presented in a *form* admissible at trial, this court does not allow the admission of pure hearsay or speculation as evidence to avoid summary judgment.").

hearsay within hearsay. [Doc. No. 27, p. 4]. In an email, Bordelon wrote, in pertinent part, that Teasley reported to her that Plaintiff, referring to Stephenson, stated "he was mad enough to kill the B_____." [Doc. No. 22-4, p. 13].

First, Plaintiff's alleged statement is not hearsay. Hearsay is a statement that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence *to prove the truth of the matter asserted* in the statement." FED. R. EVID. 801(c) (emphasis added). Plaintiff's statement is not offered for the truth of the matter asserted (i.e. that Plaintiff was actually mad enough to kill Stephenson); it is offered to demonstrate the effect it had on Defendant. Specifically, Defendant offers the statement to establish its state of mind leading to its decision to discharge Plaintiff.[13] *See Delphin v. Grayson Cty., Tex.*, 484 F. App'x 958, 963 (5th Cir. 2012) ("To the extent we consider the parties' proffered out-of-court statements by nonparty witnesses, we do not rely on them for the truth of the matter asserted but for, e.g., their effect on the hearer, such as to establish Ashmore's state of mind leading up to her decision to discharge [the plaintiff]".).

Otherwise stated, the alleged threat is introduced to show that Defendant discharged Plaintiff because it, in good faith, perceived that Plaintiff was a danger to Stephenson. *See Khalfani v. Balfour Beatty Communities, L.L.C.*, 595 F. App'x 363, 366-67 (5th Cir. 2014) ("The key inquiry is thus whether [the employee's] supervisor believed that [the employee's] actions violated procedure, not whether those actions actually violated such a policy.") (citing *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 476-77 (5th Cir. 2005) ("The critical issue is not what [the employee] told the officer . . . but what the officer relayed to [the employer's] management and what reasons

---

[13] Plaintiff's alleged statement is also admissible non-hearsay under Federal Rule of Evidence 801(d)(2)(A).

[the employer] relied on in terminating [the employee].")).  Defendant does not seek to establish that the words were *true*, it seeks to establish that the words were *said*.[14]

Next, Teasley's statement is also not hearsay.  Teasley stated that Plaintiff uttered certain words.  Defendant does not offer Teasley's statement to prove that Plaintiff did utter those words (i.e. the truth of what Teasley asserts), it offers the statement to prove that *Teasley* reported Plaintiff's alleged threat.  Defendant, in other words, offers Teasley's statement to show its effect on Defendant's state of mind.  The relevant inquiry, again, is not whether Plaintiff uttered the threat, but whether Defendant discharged Plaintiff because it, in good faith, thought that Plaintiff uttered the threat.[15]

Finally, Bordelon's email recounting Teasley's report is admissible as a record of a regularly conducted activity, which is an exception to the rule against hearsay.  Federal Rule of Evidence 803(6) provides that the following is not excluded by the rule against hearsay:

> A record of an act, event, condition, opinion, or diagnosis if:
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;

---

[14] *See Coleman v. Jason Pharm.*, 540 F. App'x 302, 306 (5th Cir. 2013) (finding, in employee's action alleging retaliatory termination for complaints she made against co-workers, that unsworn statements that employee's co-workers made to human resources, which were attached to an affidavit, were not offered to prove the truth of the matter asserted; the statements were offered to prove what the co-workers told the employer and that the partner relied upon those statements in making the decision to terminate employee).

[15] Alternatively, Teasley could testify at trial that Plaintiff made the statement.

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Hanna avers that she "maintain[s] or [has] access to Human Resources documents and files relating to individuals employed by Chase" and that the exhibit was "made by (or made from information transmitted by) a person with personal knowledge of the events[,] . . . made or entered at or near the time of events reflected in the Notes[,]"[16] made as a "regular practice[,]" and was "kept in the course of Chase's regularly conducted business activity." [Doc. No. 22-4, p. 3]. Moreover, Plaintiff does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.[17]

Next, Plaintiff argues that a statement, allegedly uttered by him to Teasley and then repeated by Teasley to Rankin, is inadmissible hearsay within hearsay. [Doc. No. 27, p. 4]. Plaintiff's alleged statement, found in a report from Defendant's human resource system, Answer Key Notes, was, "I'm going to kill that b****." [Doc. No. 22-4, p. 4]. This statement, as well as the employees' statements relaying and recounting the statement, is, for the same reasons discussed above, not hearsay. Likewise, the report in Answer Key Notes is, for the reasons discussed, admissible as a

---

[16] Bordelon wrote and sent the email the same day she interviewed Teasley and the same day Plaintiff allegedly made his statement. [Doc. No. 22-4, p. 13].

[17] *See Brauninger v. Motes*, 260 F. App'x 634 (5th Cir. 2007) (holding, in an employment discrimination action, that a human resource manager's reports, chronicling the steps of her investigation into complaints against an employee and summarizing the findings which led to discharge, were admissible under the business records exception and that the statements of the employee's coworkers in the reports were not offered to prove the truth of the matters asserted); *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 481 (5th Cir. 2002).

record of a regularly conducted activity.

Having found that Defendant's proffered evidence is admissible, and reiterating that Defendant has produced legitimate, non-discriminatory reasons for discharging Plaintiff, the Court next finds that Plaintiff has failed to genuinely dispute that Defendant's reasons for discharge were pretextual.

Plaintiff first argues that Defendant "suddenly reactivated the 'investigation' into" his actions when "Defendant was told that [Plaintiff] was returning from medical leave." [Doc. No. 27, p. 6]. Plaintiff adds, "This impetus resulted in the termination . . . ." *Id.* Essentially, Plaintiff argues that the timing of discharge, shortly after Defendant learned that he would return from medical leave, is suspicious. However, while this may be evidence of a prima facie case of discrimination, it is not evidence of pretext. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 240 (5th Cir. 2015) ("Timing standing alone is not sufficient absent other evidence of pretext.").

Next, Plaintiff argues that Defendant's reasons for termination are pretextual because he did not say what his coworkers reported he said and that, consequently, he did not engage in any conduct that violated the Policy.[18] [Doc. No. 27, pp. 7-8].

Whether Plaintiff said what his coworkers reported he said is, however, irrelevant. *De Anda v. St. Joseph's Hosp.*, 671 F.2d 850, 854, n.6 (5th Cir. 1982) ("Whether [an employer] was wrong in its determination . . . is irrelevant, as long as its belief, though erroneous, was the basis for the

---

[18] Plaintiff also argues that Defendant's Global Security Department found that Plaintiff "did not threaten to kill anyone . . . ." [Doc. No. 27, p. 10]. This is erroneous: the Global Security Department reported that Plaintiff "does not remember making the threatening comment[,]" that "his prior behavior will likely impact his future status with us[,]" that it may not have been "that high of [a] threat[,]" that Defendant "may need to go more slowly[,]" and that "there were witnesses that confirm the comment." [Doc. No. 27-1].

termination."). An employer need not be correct in its basis for discharging an employee "to show that its actions were motivated for non-retaliatory reasons." *Jones*, 793 F.2d at 729. "[T]he validity of the initial complaint is not the central issue, because the ultimate falseness of the complaint proves nothing as to the employer, only as to the complaining employee." *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 (5th Cir. 1993).[19] "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

Rather, "The issue is whether [a defendant's] *perception* of [an employee's] performance, accurate or not, was the real reason for her termination." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999). "[T]he inquiry is limited to whether the employer believed [the allegations against the employee] in good faith and whether the decision to discharge the employee was based on that belief." *Waggoner*, 987 F.2d at 1165; *Brauninger*, 260 F. App'x at 637 (noting that "the key issue is not whether the accusations were true but instead whether [the employer] relied on them—mistakenly or not—in making a nondiscriminatory decision.").[20]

---

[19] "[A]n employee cannot establish that an employer's reason for termination is pretextual simply by disputing the truth of the underlying facts for that reason. . . . Because even an incorrect belief that an employee's performance is inadequate qualifies as a legitimate reason to terminate an at-will employee, an employee must submit evidence to support an inference that the employer had a retaliatory [or discriminatory] motive, not just an incorrect belief." *Coleman v. Jason Pharm.*, 540 Fed. App'x. 302, 305 (5th Cir. 2013); *see Little v. Republic Ref. Co.,* 924 F.2d 93, 97 (5th Cir. 1991) (holding that "a dispute in the evidence concerning [an employee's] job performance does not provide a sufficient basis for a reasonable factfinder to infer that [an employer's] proffered justification is unworthy of credence."); *see also Clark v. Boyd Tunica, Inc.*, 665 F. App'x 367, 372 (5th Cir. 2016).

[20] *See Cervantez v. KMGP Servs. Co. Inc.,* 349 F. App'x 4, 10 (5th Cir. 2009) (emphasizing "that a fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith."); *Jones*, 793 F.2d at 729 (holding that it is sufficient that the employer had reasonable grounds, or in good

Here, even assuming Defendant mistakenly believed Plaintiff's coworkers,[21] Plaintiff has failed to submit any evidence—much less substantial evidence—that Defendant did not, in good faith, perceive their accounts to be true, or that Defendant's perception of Plaintiff's actions was not the real reason for discharge.[22]  Defendant's decision to rely on their accounts of the incident does not show that Defendant harbored a discriminatory motive.[23]

There is no genuine dispute that Defendant's reasons for termination were pretextual.  As demonstrating prextext is an essential element of Plaintiff's claim, Defendant is entitled to judgment as a matter of law, and Plaintiff's ADA discrimination claim is DISMISSED WITH PREJUDICE.

**E.      Plaintiff's Claims Under Louisiana Law**

Plaintiff, as mentioned, raises a hostile work environment claim, a discrimination claim, and a retaliation claim under the LEDL.  [Doc. No. 1, p. 4].  As to Plaintiff's hostile work environment and discrimination claim, the Fifth Circuit emphasized:

---

faith thought it had reasonable grounds for suspending and discharging the employee); *Long v. Eastfield College*, 88 F.3d 300, 306 (5th Cir. 1996) (noting that an employer's employment decision is protected from Title VII liability if it is made with reasonable belief and in good faith).

[21] *See Devere v. Forfeiture Support Assocs., L.L.C.*, 613 F. App'x 297, 301 (5th Cir. 2015) (reasoning that an employer may properly rely on the reports of one witness "even if those reports are incorrect.").

[22] *See Bugos v. Ricoh Corp.*, 2008 WL 3876548, at *4 (5th Cir. Aug. 21, 2008) (affirming the district court's decision that the plaintiff failed to present a genuine dispute as to pretext, because the employee did not show that the employer "did not in good faith believe these reasons given for [the employee's] termination or, accordingly, that [the] reasons were not the real reason for his termination.").

[23] *See Bryant*, 413 F.3d at 478 ("While the prudent action may have been to discuss the event with [plaintiff] and obtain his side of the story before terminating him, evidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision.").

> Louisiana's anti-discrimination statute, La.Rev.Stat. Ann. § 23:301 et seq., is "substantively similar" to Title VII, and Louisiana courts routinely look to the federal jurisprudence for guidance. *Trahan v. Rally's Hamburgers, Inc.*, 696 So.2d 637, 641 (La.App.1st Cir.1997). Consequently, the outcome of [the plaintiff's] statutory discrimination and retaliation claims will be the same under the federal and state statutes.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). In addition, the Fifth Circuit has extended Title VII hostile work environment jurisprudence to disability-based harassment claims under the ADA. *See Flowers*, 247 F.3d at 234-36. Thus, claims brought under the LEDL are analyzed using the same framework and precedent as ADA claims. *See Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1274 (5th Cir.1989); *see also Scott v. Turner Indus. Grp., LLC*, 2011 WL 5023840, *4 (M.D. La. Oct. 19, 2011) ("The ADA and LEDL provide similar rights and remedies, such that Louisiana courts routinely reference federal ADA jurisprudence when considering LEDL claims.").

Here, because Defendant is entitled to judgment as a matter of law on Plaintiff's hostile work environment and discrimination claims under the ADA, Defendant is entitled to judgment as a matter of law on Plaintiff's LEDL claims.

As to Plaintiff's retaliation claim, the LEDL does not recognize a claim for retaliation. *Glover v. Smith*, 478 F. App'x 236, 244 (5th Cir. 2012); *Lowry v. Dresser, Inc.*, 893 So.2d 966, 967 (La. Ct. App. 2005). Rather, under LA. REV. STAT. § 51:2256, an employer is prohibited from *conspiring* to retaliate. Plaintiff does not allege a conspiracy or present any evidence of a conspiracy.

Accordingly, Plaintiff's state law claims are DISMISSED WITH PREJUDICE.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. No. 22] is

GRANTED, and Plaintiff's claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 14th day of February, 2018.


**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**